NOT FOR PUBLICATION
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**FILED**

AUG 26 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

PRIT PAL SINGH, AKA Pritpal Singh,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

No.   20-70753

Agency No. A206-187-040

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted July 6, 2021[**]
San Francisco, California

Before:  GRABER and LEE, Circuit Judges, and VRATIL,[***] District Judge.

Petitioner Prit Pal Singh, a native and citizen of India, seeks review of a

decision of the Board of Immigration Appeals ("BIA") affirming the denial of his

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]     The Honorable Kathryn H. Vratil, United States District Judge for the District of Kansas, sitting by designation.

requests for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252. We deny the petition for review.

We review agency denials of asylum, withholding of removal, and relief under CAT for substantial evidence. *Yali Wang v. Sessions*, 861 F.3d 1003, 1007 (9th Cir. 2017). We also review adverse credibility determinations for substantial evidence. *Shrestha v. Holder*, 590 F.3d 1034, 1039 (9th Cir. 2010). Under this standard, we must uphold the agency's determination unless any reasonable trier of fact "would be compelled" to conclude the contrary based on the evidence in the record. *Villavicencio v. Sessions*, 904 F.3d 658, 664 (9th Cir. 2018) (internal quotation marks omitted).

1. Substantial evidence supports the agency's adverse credibility determination.

First, the record contains multiple inconsistencies concerning Singh's age at the time he was attacked by two Congress party members. For example, Singh testified that at the time he was attacked he was "14 or 15 years," then "15 or 16," and then "was going to be either 16 or 17." Meanwhile, Singh's declaration states he was attacked on November 1, 2012, which would mean Singh was 17 years old on the day he was attacked. It further states that he believes the Congress party targeted him in part because he "was approaching the age of 18" and the party was

2

"after young males to join."  Because Singh connects the reason for his persecution in part to his age, Singh's age at the time he was attacked is not a trivial fact.  The immigration judge ("IJ") concluded that, although Singh's age at the time he was attacked was probably "not significant enough to support an adverse credibility finding in its own right," it was "one more factor to consider in this matter."  We agree; these inconsistencies support the "totality of circumstances" underlying the agency's adverse credibility determination.  *See Shrestha*, 590 F.3d at 1040.

Second, Singh testified during cross-examination that police beat participants at a sit-in he attended and arrested one Sikh participant, but he omitted this event in his written declaration and initial testimony.  Generally, "omissions are less probative to credibility than inconsistencies created by direct contradictions in evidence and testimony."  *Iman v. Barr*, 972 F.3d 1058, 1067 (9th Cir. 2020) (internal quotation marks and citation omitted).  But Singh's claims for relief are based on his religion and political opinions.  Thus, any danger inherent in, or resulting from, Singh's participation in Mann sit-ins is central to his claim.  It was not unreasonable for the IJ to "expect" this event to be included in Singh's declaration even if Singh was not himself harmed by what occurred.  Therefore, this omission also supports the totality of circumstances underlying the agency's adverse credibility determination.

Third, Singh was unable to provide reasonable detail regarding the location of a sit-in he attended. *See Iman*, 972 F.3d at 1065 ("The lack of detail in an applicant's testimony can be a relevant factor for assessing credibility."). At various times he said that the sit-in "was not in a particular place," "was in the neighborhood," and was in an "open space" in a field or farm, but he could not remember what village the sit-in was in or near. Taking Singh's testimony as a whole—including the many different instances and ways in which the IJ attempted to elicit additional detail from Singh—we find support for the IJ's conclusion that Singh was evasive and unable to provide "reasonable" detail about the location of the sit-in.

2.    In the absence of credible testimony, substantial evidence supports the agency's denial of asylum and withholding of removal. *See Farah v. Ashcroft*, 348 F.3d 1153, 1156 (9th Cir. 2003). Apart from Singh's testimony, which was found not credible, Singh submitted documents and reports in support of his applications for relief. These documents demonstrate that some Sikhs and Mann party members have been harmed, arrested, or even killed in India. The documentary evidence, however, does not compel the conclusion that Singh individually would be targeted.

3. Lastly, substantial evidence supports the agency's denial of relief under CAT. "To be eligible for relief under CAT, an applicant bears the burden of establishing that she will more likely than not be tortured with the consent or

acquiescence of a public official if removed to her native country." *Xochihua-Jaimes v. Barr*, 962 F.3d 1175, 1183 (9th Cir. 2020).

Singh testified that he did not report to the police that he was attacked because the police and the Congress party "are in nexus." He also testified that, during one Mann sit-in, he witnessed local police beat participants and arrest one Sikh participant. Singh does not claim, however, that he has ever been beaten or otherwise targeted by police. Additionally, although country conditions reports confirm that torture may take place in India, "they do not compel the conclusion that [petitioner] would be tortured if returned." *See Almaghzar v. Gonzales*, 457 F.3d 915, 922–23 (9th Cir. 2006). We thus conclude that substantial evidence supports the agency's ruling that Singh did not establish that he would "more likely than not" be tortured by or with the acquiescence of Indian public officials.

**PETITION FOR REVIEW DENIED.**