**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

NOV 27 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JULIO AMILCAR DE LEON-CAN,

Petitioner,

v.

MERRICK B. GARLAND, Attorney
General,

Respondent.

No. 23-2407

Agency No.
A209-124-186

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted November 21, 2024[**]
Seattle, Washington

Before: MILLER, LEE, and H.A. THOMAS, Circuit Judges.

Petitioner Julio Amilcar De Leon-Can, a native and citizen of Guatemala,

seeks review of a decision from the Board of Immigration Appeals (BIA) affirming

the Immigration Judge's (IJ) denial of his requests for asylum, withholding of

---

[*]      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

removal, and relief under the Convention Against Torture (CAT). [1] We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition.

De Leon-Can states that he fears he will be persecuted and/or tortured if removed to Guatemala because of his membership in three particular social groups: (1) "Guatemalan children," [2] (2) "children of gang members," and (3) "immediate family members of Julio Amilcar De Leon Xante."

In support of his claims for relief, De Leon-Can testified that his biological father is a prominent member of the MS-13 street gang in Guatemala City. When De Leon-Can was about 10 months old, he and his mother were able to "escape" from his father. After their escape, though, his father repeatedly tried to kidnap him and force him "into a life of organized crime." When De Leon-Can's mother refused to "deliver" De Leon-Can to his father, he threatened to kill him to "punish" her.

De Leon-Can testified that his father (unsuccessfully) attempted to kidnap or kill him on three different occasions over the course of about a decade. The day after the last attempt, De Leon-Can and his mother called the police. The police said they were going to make a report and would send a patrol car "[i]f they had time." No officers visited. About two months later, De Leon-Can traveled to the nearest

---

[1] Because De Leon-Can's opening brief does not contain any discussion of CAT, any challenge to the agency's denial of relief under CAT is forfeited. *See Hernandez v. Garland*, 47 F.4th 908, 916 (9th Cir. 2022).

[2] De Leon-Can was born in 1999 and is now an adult.

police station to file a report against his father. De Leon-Can testified that no arrests were made but that his father was later arrested and imprisoned for murder. A family friend in Guatemala told De Leon-Can that his father later escaped from jail and that the police were looking for him.

We review de novo questions of law and mixed questions of law and fact. *Mendoza-Pablo v. Holder*, 667 F.3d 1308, 1312 (9th Cir. 2012). We review for substantial evidence the factual findings underlying the BIA's denial of relief. *Plancarte Sauceda v. Garland*, 23 F.4th 824, 831 (9th Cir. 2022). Under this standard, we must uphold the agency's determination unless any reasonable trier of fact "would be compelled to conclude to the contrary" based on the evidence in the record. *Villavicencio v. Sessions*, 904 F.3d 658, 663–64 (9th Cir. 2018).

Substantial evidence supports the BIA's determination that De Leon-Can is not eligible for asylum or withholding of removal because he failed to meet his burden of establishing that the Guatemalan government is "unable or unwilling" to protect him from the persecution he fears. *Hussain v. Rosen*, 985 F.3d 634, 647–48 (9th Cir. 2021).

First, the BIA noted that during one kidnapping attempt, a nearby police officer intervened by firing his gun into the air, which scared away De Leon-Can's assailants. De Leon-Can argues that this "cannot be viewed as an 'official' response" because the officer "was not called to the scene by anyone and was instead

3 23-2407

serendipitously nearby." He also argues that the officer "did not make any arrests." But the officer's failure to apprehend De Leon-Can's assailants after successfully preventing his kidnapping does not "compel" a finding that Guatemalan officials are unable or unwilling to protect him. *Doe v. Holder*, 736 F.3d 871, 878 (9th Cir. 2013) (noting that an "unwillingness or inability to control persecutors is not demonstrated simply because the police ultimately were unable to solve a crime or arrest the perpetrators").

Second, the BIA noted that De Leon-Can "was able to make multiple police reports." De Leon-Can argues that because this was "the full extent of law enforcement action taken in response to his seeking protection," it shows law enforcement is unable and unwilling to protect him. But this was not the full extent of law enforcement action. The police in Guatemala thwarted one attempted kidnapping and also arrested and imprisoned De Leon-Can's father, albeit for additional, unrelated crimes. That the police did not do more does not compel a finding that they are unable or unwilling to protect him. *See e.g.*, *Nahrvani v. Gonzales*, 399 F.3d 1148, 1154 (9th Cir. 2005) (holding the record did not compel unable-or-unwilling finding where police "took reports documenting [the petitioner's] various complaints").

Third, the BIA noted that officials in Guatemala ultimately arrested and imprisoned De Leon-Can's father. De Leon-Can argues that the arrest and

imprisonment of his father "regarded a criminal act completely distinct" from what happened to him and is therefore not probative of the Guatemalan government's ability to protect him. He also argues that his father's escape shows "a failure of the government to protect the public." But these same events can also be construed as the agency viewed them—as evidence the police "have taken some steps to locate his father, to imprison his father for crimes, and to continue looking for him." In other words, the events can be viewed as evidence that the police are able and willing to pursue De Leon-Can's father despite his father's status within the MS-13 gang. For these reasons, we hold that the record does not compel a finding that the Guatemalan government is unable or unwilling to protect De Leon-Can. *See Mairena v. Barr*, 917 F.3d 1119, 1126 (9th Cir. 2019) (noting "our task is to determine whether there is substantial evidence to support the BIA's finding," not to analyze "which side in the factual dispute we find more persuasive" (internal citations and quotation marks omitted)).

**PETTITION DENIED.**